UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KARIM AL AZHARI | § | |
| | § | |
| v. | § | |
| | § | |
| SBA PROPERTIES, LLC, HICKORY | § | CIVIL ACTION NO. 4:20-cv-04157 |
| CONTAINERS GROUP, INC., THE | § | |
| ENGY GROUP, LLC, AND FRANCOIS | § | |
| STANISLAS BELLON a/k/a STASH | § | |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

TO THE HONORABLE DISTRICT COURT JUDGE:

COMES NOW Plaintiff, KARIM AL AZHARI, hereinafter called Plaintiff, complaining of SBA PROPERTIES, LLC, HICKORY CONTAINERS GROUP, INC., THE ENGY GROUP, LLC, FRANCOIS STANISLAS BELLON a/k/a STASH, and PHIL LOPEZ hereinafter called Defendants.  Plaintiff would respectfully show the Court in this First Amended Complaint the following:

**1.00   PARTIES**

1.01   Plaintiff is a resident of United Arab Emirates.

1.02   Defendant, SBA PROPERTIES, LLC, is a limited liability company doing business in Texas and may be served with citation through its registered agent, SBA Properties General Management, LLC, at 4899 Montrose Blvd, Suite 805, Houston, Texas 77006.

1.03   Defendant, HICKORY CONTAINERS GROUP, INC., is a limited liability company doing business in Texas and may be served with citation through its registered agent, J. Hugh Willey, Jr., at 2121 Sage Road, Suite 250, Houston, Texas 77056.

1.04    Defendant, THE ENGY GROUP, LLC ("Engy"), is a limited liability company doing business in Texas and has answered in this matter.

1.05    Defendant, FRANCOIS STANISLAS BELLON a/k/a STASH ("Stash") is an individual that may be served wherever he is found.  Plaintiff has been advised that Defendant Stash is represented by Brice B. Beale of Hoover Slovacek, LLP; however, Defendant Stash has not appeared in this case.

1.06    Defendant, PHIL LOPEZ is an individual that may be served wherever he is found.

**2.00    JURISDICTION AND VENUE**

2.01    Plaintiff brought this case in state court.  Defendant Engy filed a Suggestion of Bankruptcy after an Involuntary Petition for Bankruptcy was filed against Defendant Stash.  Based on this bankruptcy, Defendant Engy removed the case to this Federal Court, alleging federal jurisdiction due to the bankruptcy of a defendant.  Plaintiff denies that the removal was proper; however, this Court has now severed out the claims against Defendant Stash which would remove the basis for Defendant Engy's alleged basis for federal jurisdiction.  However, Plaintiff was instructed by this Court to file an Amended Complaint in response to Defendant Engy's Motion for Judgment on the Pleadings.  Thus, Plaintiff files this First Amended Complaint but will contest the basis for federal jurisdiction and venue now that Defendant Stash has been severed from the case.

**3.00    FACTUAL BACKGROUND**

3.01    Sometime in 2019, Defendant Stash approached Plaintiff and his associate Bashar Mardini ("Mardini") seeking a loan in the amount of $250,000 from Plaintiff and $500,000 from Mardini.  Plaintiff and Mardini were working in tandem on this deal, and Mardini served as a representative for Plaintiff on this deal.  Defendant Stash represented to Plaintiff and Mardini that

he was the main owner of Engy, a large industrial facility in Houston, Texas (located at 2425 Mowery Rd, Houston, TX 77045). Defendant Engy, through its employees, including its CEO, Phil Lopez, participated in this representation which turned out to be false. Mardini made two trips to inspect the Engy facility, one on or around Aug. 17, 2018 and one on or around Aug. 10, 2019. On the first inspection visit, Defendant Engy allowed Defendant Stash to meet Mardini at the Engy facility and to give Mardini a tour of the facility. When Mardini arrived at the facility, he was buzzed into the gate by presumably an Engy employee and taken to a conference room - presumably by an Engy employee - to meet with Defendant Stash. Mardini was then given a tour throughout the Engy facility to demonstrate the value of the company for which they were seeking money from Mardini and Plaintiff. On his second tour of the facility, Mardini had a meeting with Engy CEO Phil Lopez and Defendant Stash who both continued to represent that Defendant Stash was the main owner of Engy and that the money sought from Mardini and Plaintiff was being put to use to expand Engy's operations. Mr. Lopez provided Mardini with a large amount of operational data, profit projections, and other important information about Engy in this meeting. Mr. Lopez gave Mardini his Engy business card. Engy's website showed at the time - and still shows currently - Phil Lopez as Engy's CEO. Mardini and Plaintiff were even given a 29-page Investor Presentation from Engy in order to induce Mardini and Plaintiff to loan money to expand Engy's operations. Both Plaintiff and Mardini relied on Engy's and Stash's representations that Defendant Stash was the main owner of Engy and thus, that there would be no problem having their loan paid back plus interest. Both Plaintiff and Mardini relied on Engy's and Stash's representations that Mardini and Plaintiff's money would be spent on expanding Engy's operations.

After Plaintiff funded the $250,000, Plaintiff received written confirmation of receipt of the funds on Engy letterhead. The loan was made to Defendants, SBA PROPERTIES, LLC and HICKORY CONTAINERS, shell companies presumably created by Defendant Stash to receive the funds – allegedly for Engy's operational costs. As it turns out, Defendant Stash did not own the facility, nor did SBA Properties, LLC or Hickory Containers; the facility was actually owned by Defendant Engy.

3.02   Relying on these representations, Plaintiff entered into a loan agreement evidenced by a certain Promissory Note dated June 10, 2019 (hereinafter referred to as the "Note") whereby Plaintiff loaned Defendant, SBA PROPERTIES, LLC, for the use of Defendant, HICKORY CONTAINERS GROUP, INC., (collectively, the "Borrower") the sum of $250,000 with an annual interest rate of 12% and a default interest rate of 18%. The maturity date of the Note was set for ninety (90) days from the effective date of the loan. With the maturity date long passed, Plaintiff has made a written demand for payment. To date, Plaintiff has not been repaid any of his money.

**4.00   CAUSE OF ACTION #1: FRAUD AND MISREPRESENTATION**

4.01   Plaintiff incorporates by this reference, all preceding and successive paragraphs of this Complaint, in their entirety, as though fully set forth in this cause of action, and further allege as follows: As discussed above, the statements, representations, and concealment of material facts, made by Defendant Stash and Defendant Engy's agents, management, employees, and representatives were false at the time Defendants made such misrepresentations and were known by Defendants to be false at the time the misrepresentations and concealment of facts were made. The misrepresentations and concealment of material facts were made by specific individuals who identified themselves as owners, employees, officers, directors, supervisory and management employees, agents, and/or representatives of Engy. As CEO of Engy, Phil Lopez clearly had

authority to act on behalf of Engy. The above-described misrepresentations and concealment of material facts were made by the above identified persons on behalf of Defendant Engy and Defendant Stash for the purpose of inducing Plaintiff's reliance upon the intentional misrepresentations and concealment of material facts in loaning the $250,000. Defendant Stash and Defendant Engy represented to Mardini and Plaintiff that Defendant Stash owned Engy and would have no problem paying back the loan plus interest. Engy and Stash represented to Mardini (who served as Plaintiff's representative) and Plaintiff that the funds sought would be used to expand Engy's operations. Upon information and belief, the money was not spent to expand Engy's operations. Plaintiff relied to his detriment on these material representations in loaning the above-referenced $250,000. However, as it turned out, neither Stash nor the Borrower own the facility which was actually owned by Defendant Engy. To date, Plaintiff has not been repaid any of his money. Plaintiff had no knowledge, and was ignorant, of the falsity of Defendants' misrepresentations and concealment of material facts, and in fact believed Defendants' statements to be true and accurate.

4.02    Plaintiff had a right to rely, and was reasonable in his reliance, upon Defendants' misrepresentations and concealment of material facts as described in this Complaint, as Defendants placed themselves in a position of superior knowledge and authority over Plaintiff.

**5.00    CAUSE OF ACTION #2:  CONSPIRACY TO COMMIT FRAUD**

5.01    Plaintiff incorporates by reference, as if fully set forth at length in their entirety, each and every allegation set forth in the preceding and succeeding paragraphs of this Complaint, and further allege as follows: Defendant Stash would not have been able to make a believable claim that he was a primary owner of Engy without being able to use Engy's facilities and employees to sell the misrepresentation to Mardini and Plaintiff. Defendant Engy allowed

Defendant Stash to use its facility to give tours and allowed its employees (including its CEO) to participate in the fraud. Plaintiff alleges that all Defendants engaged in a conspiracy to commit the wrongful acts and conduct described in this Complaint. Defendant Engy and Defendant Stash intentionally engaged in their conduct and activities knowing that the particular results of the fraud would be Plaintiff loaning $250,000.

5.02   Defendants and all of them together did agree together to engage in the formation and operation of a conspiracy and concert of action to defraud, intentionally misrepresent, and to further damage Plaintiff. Defendants and all of them did agree together to engage in their conspiracy to commit such acts and did agree together that they would all together benefit financially by their fraudulent actions, conduct, and business practices. Defendants and all of them knew and had knowledge of the involvement of each and of the others of the formation and operation of their conspiracy to commit their wrongful acts and agreed together to act together in a common design and to engage each other to implement and to further their wrongful acts and business practices and plans, as alleged in this Complaint.

5.03.   Defendants' fraud and conspiracy to commit fraud and to intentionally conceal true material facts caused financial harm to Plaintiff.

6.00   **CAUSE OF ACTION #3: IN THE ALTERNATIVE, NEGLIGENCE AND GROSS NEGLIGENCE AS TO DEFENDANT ENGY**

6.01   Plaintiff incorporates by reference, as if fully set forth at length in their entirety, each and every allegation set forth in the preceding and succeeding paragraphs of this Complaint, and further allege as follows:  Although Plaintiff alleges that Defendant Engy was fully aware of the fraud and conspiracy to commit fraud as described above, in the event that the finder of fact determines that Defendant Engy was not aware of the fraud, then Plaintiff alleges that Defendant Engy was negligent in allowing its facilities, employees and CEO to be used by Defendant Stash

to execute the fraud on Plaintiff. Defendant Engy had a duty to not take affirmative steps in presenting the misrepresentations to Plaintiff, namely that Stash was an owner of Engy and that Plaintiff's money would be spent on expanding Engy's operations. Defendant Engy knew or should have known that such actions would cause Plaintiff to believe that Stash and/or Borrowers were indeed owners of Engy and cause Plaintiff to invest in Engy and/or make the loan at issue. In fact, this causation was so obvious that it would have been reckless for Defendant Engy to allow its facilities, employees and CEO to be used by Defendant Stash to execute the fraud on Plaintiff. In this regard, Defendant Engy was grossly negligent, and Plaintiff is therefore entitled to punitive damages.

### 7.00 DAMAGES AND PUNATIVE DAMAGES

7.01 The wrongful conduct of Defendants is the proximate cause of actual and consequential damages to Plaintiff in an amount exceeding the minimal jurisdictional limits of this Court, and for which it hereby sues. Plaintiff has lost his $250,000, opportunity costs for that $250,000 and has incurred attorneys fees and expenses as a result of Defendants' conduct.

7.02 All conditions precedent to Plaintiff's recovery of damages have been performed or have occurred.

7.03 The acts and omissions, as set forth above, were committed by Defendants with a mental state constituting malice as that term is defined in *TEX. CIV. PRAC & REM CODE* § 41.001. Such gross negligence and malice was authorized by Defendants, ratified by Defendants and/or committed by a managerial or supervisory agent of Defendants. Such malice warrants the imposition of exemplary damages and was a proximate cause of Plaintiff's injuries. Plaintiff seeks exemplary damages in such an amount as may be found to be proper under the facts and circumstances.

**8.0 CONDITIONS PRECEDENT, CAUSATION, AND REQUEST FOR JURY TRIAL**

8.01 All conditions precedent to the filing of this lawsuit have been performed or have occurred.

8.02 Each of the aforementioned acts, and omissions of Defendants was a proximate and/or producing cause of injury to Plaintiff.

8.03 Plaintiff hereby request that this lawsuit be tried to a jury of Plaintiff's peers as permitted by the Constitution and laws of the State of Texas. The appropriate jury fee is being tendered herewith to the appropriate authorities.

**9.00 ATTORNEY'S FEES**

9.01 Due to the Defendants' wrongful conduct, Plaintiff has hired the undersigned attorney to file this lawsuit for recovery of the damages and other relief due to Plaintiff from Defendants. Plaintiff seeks recovery of attorney fees.

**10.00 PRAYER**

WHEREFORE, Plaintiff prays that the Defendants be duly cited to appear and answer herein; that upon a final trial of this cause, Plaintiff will recover:

1. Judgment against Defendants for actual damages found by the trier of fact proximately cause by their wrongful conduct;

2. Pre-judgement and post judgment interest at the legal rate;

3. Reasonable and necessary attorney's fees;

4. All costs of court and costs of litigation; and

5. Such other and further relief to which Plaintiff may show itself justly entitled.

Respectfully submitted,

**BUSH & RAMIREZ, PLLC**


By: */s/William S. Bush*
William S. Bush
Federal Bar No. 7654
State Bar No. 03497500
5615 Kirby Drive, Suite 900
Houston, TX  77005
Telephone:     (713) 626-1555
Facsimile:     (713) 622-8077
Email: wsbush.atty@bushramirez.com

***Attorney for Plaintiff***

## **CERTIFICATE OF SERVICE**

  I hereby certify that, on May 5, 2021, a true and correct copy of the foregoing document was served via electronic filing, to all counsel of record as shown below:

William K. Grubb
Jonathan D. Baughman
McGinnis Lochridge, LLP
609 Main Street, Suite 2800
Houston, TX  77002
Email: wgrubb@mcginnislaw.com
Email: jbaughman@mcginnislaw.com

***Attorneys for Defendant The Engy Group, LLC***

                */s/William S. Bush*
                William S. Bush